**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| **v.** | : | **NO.  04-619** |
| | : | |
| **PRESTON LIT** | : | **CIVIL ACTION** |
| | : | **NO.  07-903** |

**DuBOIS, J.**                                              **JUNE 12, 2007**

**M E M O R A N D U M**

## I.      INTRODUCTION

Petitioner Preston Lit is incarcerated in the Federal Medical Center (FMC) Devens in

Devens, Massachusetts.  On March 6, 2007, petitioner filed a counseled Motion to Vacate, Set

Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Section 2255 Motion").  Presently

before the Court is the government's Motion to Dismiss the § 2255 Motion.  For the reasons set

forth below, the Court concludes that the waiver provision of petitioner's Guilty Plea Agreement

precludes petitioner from collaterally attacking his conviction or sentence under § 2255.  Thus,

the government's Motion to Dismiss is granted and petitioner's § 2255 Motion is dismissed with

prejudice.

## II.     BACKGROUND

Petitioner Preston Lit suffers from mental health disorders, including schizo-affective

disorder and bipolar type, which are controlled by medication.  Tr. 8/10/05 at 52.  He

"decompensates rapidly when not on medication."  Id.

On February 18, 2004, petitioner placed "a device that purported to be and looked to be

and was received by the people who looked at it to be a bomb" in a men's bathroom in the

Philadelphia International Airport.  Tr. 5/23/05 at 60.  The fake bomb was a white cardboard

shoe box and two notes attached to the box.  It was described as follows:

> White nylon cord was wrapped around the box and two pairs of blue and yellow
> handled pliers were attached to the box with the nylon cord.  There were also three
> nails visible that were embedded into the top of the box.  Written on the outside of
> the box in red and blue ink were the words, "Al Quada Airport Device, (the incorrect
> spelling of the name; the correct spelling is Al Qaeda)."  Written in pencil on the
> outside of the box were the words, "15 lbs C-4, 3 lbs TNT, 2 blast caps, 1 silent
> timer."  Also drawn on the box in pencil was a clock face set at 7:00.  Attached to
> the box was a note which read; "all U.S. airspace closed to commercial traffic from 2-20-
> 04 noon, to 2-28-04 noon, only military aircraft may fly."  The note was signed,
> "Preston."  A second note, written on a National Parks Conservation Association
> mailer, was attached to the outside of the box.  It was dated "14 Feb 2004" and read;
> "Dear George W., get the fuck out of Iraq now.  Be all gone by April 15th at noon
> est.  George Washington, Saddam Hussein, Jesus II."

Govt's Change of Plea & Sentencing Mem. at 6.[1]

On May 23, 2005, petitioner pled guilty pursuant to a Guilty Plea Agreement to one count

of threatening to use a weapon of mass destruction in violation of 18 U.S.C. §§ 2332a(a)(2) and

(3) (Count 1) for the planting of the fake bomb and one count of malicious damage or destruction

of a building with fire in violation of 18 U.S.C. § 844(i) (Count 2).[2]

## A.    Guilty Plea Agreement and Waiver of Right to Collateral Attack

Petitioner's Guilty Plea Agreement was a "C plea" under Federal Rule of Criminal

Procedure 11(c)(1)(C).[3]  Pursuant to the C plea, the government recommended a sentence of,

---

[1]  At the May 23, 2005 change of plea hearing, petitioner admitted that he committed the
acts described in the Government's Change of Plea and Sentencing Memorandum.  Tr. 5/23/05 at
59.

[2]  The factual basis of Count 2 is not at issue in petitioner's § 2255 Motion.

[3]  Rule 11(c)(1)(C) provides, in relevant part, that: "the plea agreement may specify that
an attorney for the government will . . . agree that a specific sentence or sentencing range is the
appropriate disposition of the case . . . (such a recommendation or request binds the court once

*inter alia*, nine years imprisonment and five years supervised release.[4]  In exchange for the recommended sentence, petitioner agreed to waive his appellate rights and his rights to collaterally attack his conviction and sentence.  Specifically, petitioner's Guilty Plea Agreement provided as follows:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under . . . 28 U.S.C. § 2255, or any other provision of law.

Guilty Plea Agreement ¶ 9, <u>filed as</u> Govt's Change of Plea & Sentencing Mem., Ex. A (hereinafter "Guilty Plea Agreement").  In addition, petitioner signed an Acknowledgment of Rights, which stated "I understand that if I plead guilty, I have waived my right to appeal, except as set forth in paragraph 9 of the guilty plea agreement."  <u>Id.</u> Attachment ¶ 6.

**B.**     **Change of Plea Hearing**

At the May 23, 2005 change of plea hearing, the Court engaged in an colloquy with petitioner about his mental health.  <u>See</u> Tr. 5/23/05 at 10-14.  Petitioner testified that he was taking Seroquel for his bipolar disorder.  <u>Id.</u> at 11-12.  He further testified that the medication would not prevent him from understanding the Court's questions and answering them truthfully. <u>Id.</u> at 12.  Maureen O'Hara, a mental health expert of the United States Probation Department testified that Seroquel is an antipsychotic medication and that the medication would have no impact on petitioner's ability to understand and answer the Court's questions.  <u>Id.</u> at 13.

_____

the court accepts the plea agreement)."  Fed. R. Crim. P. 11(c)(1)(C).

[4] As stated below, the Court accepted the C plea at the sentencing hearing on August 10, 2005.  Tr. 8/10/05 at 16, 44.

Thereafter, the Court engaged in a guilty plea colloquy with defendant pursuant to Federal Rule of Criminal Procedure 11(b).  At the Court's request, the government explained the provision of the plea agreement under which petitioner waived the right to appeal or collaterally attack his conviction or sentence as follows: "[I]n paragraph 9 the defendant agrees that he's waiving all rights to a direct appeal as well as a collateral attack on his conviction, sentence or any other matter related to the prosecution, whether this arises under 18 U.S.C. §§ 3742, 1291 or 2255 or any other provisions of law." Tr. 5/23/05 at 39.  The Court then engaged in the following colloquy with petitioner:

> The Court:     Do you understand that, Mr. Lit, the further limitations on your right to appeal?
> Defendant:     Yes, your Honor.
> The Court:     Do you have any questions about that?
> Defendant:     No, your Honor.
> The Court:     Do you understand that by waiving the rights I have discussed with you you cannot later come to any court and claim that you were not guilty or that your rights have been violated?
> Defendant:     If that's true, yes, your Honor.
> The Court:     Well, it is true.  Let me review it again.  Do you understand that when you plead guilty and by waiving the rights – let me do it again.  Do you understand that by pleading guilty and by waiving the rights I have discussed with you, you cannot later come to any court and claim that you were not guilty or that your rights have been violated?
> Defendant:     Yes, your honor.

Id. at 40.

The Court also asked petitioner whether he had read the Guilty Plea Agreement and discussed it with plea counsel, Robert Donatoni, Esq.  Petitioner responded that he had read the agreement "[a] few times" and that he had discussed the agreement with plea counsel.  Id. at 47. Petitioner further testified that plea counsel had answered any questions that he had regarding the plea agreement.  Id. at 47-48.

4

On the basis of petitioner's testimony, the Court held that petitioner was "fully competent and capable of entering an informed plea and that [the] plea of guilty [was] a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offenses charged in Counts 1 and 2 . . ." Id. at 72.  Accordingly, the Court accepted petitioner's guilty plea.  Id.

**C.     Sentencing**

Petitioner was sentenced on August 10, 2005.  At the sentencing hearing, the Court calculated petitioner's advisory sentence under the 2004 edition of the United States Sentencing Guidelines ("Sentencing Guidelines").  Tr. 8/10/05 at 9.  The Court concluded that petitioner's total offense level for Counts 1 and 2, without consideration of Chapter 4 enhancements, was 34. Id. at 12.  The Court further concluded that petitioner was a career offender under § 4(b)(1.1) of the Sentencing Guidelines.  Id.  Under § 4(b)(1.1), the adjusted offense level was 37.  Id. Petitioner was entitled to a three-level reduction for acceptance of responsibility.  Id.  Thus, the total offense level for Counts 1 and 2 was 34.  Id.  Because petitioner was a career offender under § 4(b)(1.1), his Criminal History Category was VI.  Id. at 13.  Under the Sentencing Guidelines, the applicable sentencing range was 262 to 327 months imprisonment.  Id.

However, pursuant to the C plea, the government and petitioner agreed that a nine-year term of imprisonment was an appropriate disposition.  Id.  The Court accepted the C plea.  Id. at 16, 44.  Specifically, the Court held that "a nine-year sentence [was] an appropriate sentence under all the circumstances, weighing on the one hand the heinous nature of the crime and on the other hand [petitioner's] serious mental illness" and considering all of the factors set forth in 18 U.S.C. § 3553(a).  Id. at 42, 51.  The Court sentenced petitioner to *inter alia*, nine years

5

imprisonment and five years supervised release.  Id. at 44.

**D.    Direct Appeal**

On August 16, 2005, petitioner filed a *pro se* Notice of Intent to Appeal.  Thereafter, the government filed a motion to dismiss the appeal under the appellate waiver provision of petitioner's Guilty Plea Agreement.  By Order dated March 14, 2006, the Court of Appeals for the Third Circuit granted the government's motion and dismissed petitioner's direct appeal on the basis of the appellate waiver.  The March 14, 2006 Order made no reference to petitioner's waiver of his right to collateral attack under § 2255.

**E.    Section 2255 Motion**

On March 6, 2007, petitioner filed the instant § 2255 Motion, in which he raises two grounds for relief: (1) that petitioner's "conviction was obtained and sentence imposed in violation of the Sixth Amendment Right to Counsel, and the right to Effective Assistance of Counsel at all critical stages of the proceedings" and (2) that petitioner's "conviction was obtained and sentence imposed in violation of the Fifth and Sixth Amendments to the Constitution of the United States."  Mot. ¶¶ 12(A) and (B).  In support of both grounds for relief, petitioner argues that there was no factual basis for his guilty plea to Count 1, threatening to use a weapon of mass destruction under 18 U.S.C. §§ 2332a(a)(2) and (3).  Mem. Law Supp. at 19-21.

In addition, in the § 2255 Motion, petitioner challenges the validity of his waiver of the right to collaterally attack his conviction and sentence.  Petitioner argues that his waiver was not knowing and voluntary under all of the evidence; that the waiver provision was the product of ineffective assistance of plea counsel; and that enforcement of the waiver is "contrary to the public interest."  Mem. Law Supp. at 10-13.

6

On March 8, 2007, the government filed a Motion to Dismiss petitioner's § 2255 Motion. In the Motion to Dismiss, the government argues that petitioner's waiver of his right to collateral attack bars petitioner's claims for relief in the § 2255 Motion.

**F.      Evidentiary Hearing**

On May 3, 2007 the Court held an evidentiary hearing on petitioner's claim that his waiver of the right to collateral attack was the product of ineffective assistance of plea counsel. At the evidentiary hearing petitioner testified on his own behalf and the government presented one witness, plea counsel. Tr. 5/3/07 at 3.  The evidence presented at the May 3, 2007 evidentiary hearing may be summarized as follows:

Plea counsel testified that he explained the waiver of collateral attack provision to petitioner.  Tr. 5/3/07 at 13.  Specifically, plea counsel told petitioner "that there would be no appeal and collateral attack meant no attacking the sentence or the plea based on issues regarding counsel's performance or other, any other basis.  So in essence it was all over."  Id. at 14.  Plea counsel further explained that "[t]here may have been concepts that originally [petitioner] didn't understand but he was a quick study.  In other words, if there was some legal issue regarding a guideline or a departure when we were talking about trial, he might not have understood that but on further explanation he understood, I believe."  Id. at 14.  As to the waiver provision, plea counsel testified that "[t]here's no doubt in my mind that he understood it."  Id. at 13.

Petitioner testified that he could not recall whether plea counsel explained the waiver of collateral attack provision of the Guilty Plea Agreement.  Id. at 44.  However, petitioner also testified that plea counsel explained that a collateral attack was "like an appeal," and that he thought collateral attack "was an appeal, that we could come back into court."  Id. at 44-45.  On

7

cross-examination by Assistant United States Attorney Nancy Beam Winter, Esq., petitioner

testified as follows:

> Q:    And is it fair to say I also said that to you, that if you plead guilty and we
>       recommend a C plea, which is unique, a nine-year sentence, that the case will
>       be over.  There will be no appeals, no attacks, it will be done, do you recall
>       that?
> A:    Not completely.
> Q:    Generally?
> A:    Generally.
> Q:    So it's fair to say that Mr. Donatoni told you and I told you, correct?
> A:    Correct.

Id. at 57.

## III.    LEGAL STANDARD

Waivers of the right to appeal are generally valid if entered into "knowingly and

voluntarily." United States v. Gwinnett, 483 F.3d 200, 203 (3d Cir. 2007).  "In determining

whether a waiver of appeal is 'knowing and voluntary,' the role of the sentencing judge is

critical." United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001).[5]

However, "an error amounting to a miscarriage of justice may invalidate" a knowing and

voluntary waiver.  Khattak, 273 F.3d at 558, 562; see also Gwinnett, 483 F.3d at 203.  To

determine whether a "miscarriage of justice" has occurred, courts in this Circuit consider the

following factors: " 'the clarity of the error, its gravity, its character (e.g., whether it concerns a

fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the

---

[5]   The Third Circuit has not yet ruled on the question whether a waiver of a right to
collaterally attack a sentence under 28 U.S.C. § 2255 is valid and enforceable.  Simon v. United
States, 2006 WL 3534600, *4 (D.N.J. Dec. 7, 2006); see also United States v. Wilson, 429 F.3d
455, 460 n.6 (3d Cir. 2005) (declining to reach the issue).  This Court, like many others in this
Circuit, finds that the Khattak standard applies to waivers of the right to collateral attack under
§ 2255.  See United States v. Miles, 2007 WL 218755, *6 (E.D. Pa. Jan. 26, 2007) (collecting
cases).

defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.' " Khattak, 273 F.3d at 563 (quoting citing United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

The Third Circuit has expressly declined to "earmark specific situations," in which enforcement of a waiver would amount to a "miscarriage of justice." Khattak, 273 F.3d at 563. However, courts in this Circuit have repeatedly held that enforcement of a waiver that is itself based upon ineffective assistance of counsel may result in a miscarriage of justice. See States v. Akbar, 181 Fed. App'x 283, 286 (3d Cir. 2006) (holding that "it is possible for there to be a miscarriage of justice when 'plea proceedings were tainted by ineffective assistance of counsel'") (quoting Teeter, 257 F.3d at 25 n.9); United States v. Barralaga-Rodriguez, 164 Fed. App'x 270, 274 (3d Cir. 2006); United States v. Perez, 2006 WL 3300376, *4 (E.D. Pa. Nov. 9, 2006); United States v. Dancy, 2006 WL 2504028, *4 (M.D. Pa. Aug. 28, 2006); United States v. Robinson, 2004 WL 1169112, *3 (E.D. Pa. Apr. 30, 2004) (collecting cases).[6]  However, an ineffective assistance of counsel argument "survives only with respect to those discrete claims which relate directly to the negotiation of the waiver." Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1998); see also Perez, 2006 WL at *4.

## IV.   DISCUSSION

In the instant Motion to Dismiss, the government argues that all of petitioner's claims are

---

[6]  There is also authority for the proposition that ineffective assistance of counsel as to an appellate waiver may render the waiver unknowing and involuntary. See, e.g., United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001); Perez, 2006 WL 3300376 at *3. For the sake of clarity, this Court analyzes petitioner's ineffective assistance of counsel claim under the "miscarriage of justice" prong of Khattak. Were the Court to analyze petitioner's claim under the "knowing and voluntary" prong of Khattak, the result would be the same.

barred by the waiver provision of petitioner's Guilty Plea Agreement.  To determine whether the waiver provision is valid, the Court must determine whether the waiver was entered "knowingly and voluntarily" and whether enforcement of the waiver would result in a "miscarriage of justice."  The Court considers each of these issues in turn.

**A.      Petitioner Knowingly and Voluntarily Agreed to the Waiver Provision**

In his § 2255 Motion, petitioner asserts that the waiver of his rights to collateral attack was not knowing and voluntary under all of the evidence.  The Court disagrees.

Pursuant to paragraph 9 of his Guilty Plea Agreement, petitioner "voluntarily and expressly waive[d] all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under . . . 28 U.S.C. § 2255, or any other provision of law."  Guilty Plea Agreement ¶ 9.

At the May 23, 2005 change of plea hearing, the Court engaged in a Rule 11 colloquy with petitioner regarding this waiver provision.  Tr. 5/23/05 at 39-40.  At the Court's request, the government explained paragraph 9 of the Guilty Plea Agreement to petitioner.  Id. at 39-40.  The Court then asked petitioner whether he understood the waiver provision as follows: "Do you understand that by pleading guilty and by waiving the rights I have discussed with you, you cannot later come to any court and claim that you were not guilty or that your rights have been violated?"  Id. at 40.  Petitioner answered "Yes."  Id.  Petitioner further testified that he read the Guilty Plea Agreement "[a] few times," that he had discussed the agreement with counsel, and that plea counsel had answered any questions he had regarding the plea agreement.  Id. at 47-48.  On the basis of petitioner's testimony, the Court held that petitioner was "fully competent and capable of entering an informed plea and that [the] plea of guilty [was] a knowing and voluntary

10

plea." Id. at 72.

The testimony of plea counsel and petitioner at the May 3, 2007 evidentiary hearing corroborates that petitioner knowingly and voluntarily accepted the waiver provision of the Guilty Plea Agreement.  At the evidentiary hearing, plea counsel testified that he explained the waiver provision to petitioner and that he had "no doubt" that petitioner understood it.  Tr. 5/3/07 at 13.  Petitioner himself testified that plea counsel explained that a collateral attack was "like an appeal" and that both plea counsel and the government told him that if he pled guilty, the case would be over.  Id. at 44, 57.[7]

In sum, the Guilty Plea Agreement, this Court's Rule 11 colloquy, and the testimony of petitioner and plea counsel at the May 3, 2007 evidentiary hearing all demonstrate that petitioner knowingly and voluntarily agreed to the waiver provision of his Guilty Plea Agreement.  Thus, the Court concludes that petitioner knowing and voluntarily waived his right to collateral attack under Khattak.

**B.     Petitioner's Arguments that the Waiver Was Unknowing and Involuntary Lack Merit**

The Court writes further to address three arguments raised by petitioner in support of his claim that the waiver provision of his Guilty Plea Agreement was unknowing and involuntary. The Court concludes that each of these arguments is wholly without merit.

First, petitioner asserts the Court did not satisfy Rule 11 because the waiver of the right to collateral attack was explained by the government rather than the Court.  Mem. Law Supp. at 10-

---

[7]  Petitioner also testified that he could not recall whether plea counsel explained the waiver of collateral attack provision, and that he thought "we could come back into court."  Tr. 5/3/07 at 44-45.  Assuming *arguendo* that this testimony is credible, it does not render the waiver provision unknowing or involuntary under all of the evidence.

11.[8]  The Court rejects this argument.  At the change of plea hearing, the government explained

the waiver provision to petitioner at the Court's request.  Tr. 5/23/05 at 39.  The Court then

confirmed that petitioner understood the waiver provision.  Id. at 40.  As the Court held at the

May 3, 2007 evidentiary hearing, this procedure was proper.  Tr. 5/3/07 at 79; see also United

States v. Medina, 2001 WL 869565, *1 n.5 (E.D. Pa. July 30, 2001) ("Contrary to petitioner's

argument, a prosecutor may explain the charges in the indictment without violating Rule 11.").

Further, under Federal Rule of Criminal Procedure 11(h), "[a] variance from the requirements of

this rule is harmless error if it does not affect substantial rights."  Thus, no Rule 11 error

occurred.

Second, petitioner argues that the waiver provision was unknowing and involuntary

because the Guilty Plea Agreement is ambiguous as to the waiver of the right to collateral attack.

Pet.'s Suppl. Resp. at 2; Post-Hearing Mem. Law at 2-3.  In support of this argument, petitioner

points out that paragraph 6 of the Acknowledgment of Rights, which was attached to the Guilty

Plea Agreement, refers only to the waiver of appellate rights, and not the waiver of the right to

collateral attack.  See Guilty Plea Agreement, Attachment ¶ 6.  The Court disagrees with

petitioner's characterization of the Guilty Plea Agreement.  That document is unambiguous on its

face.  See Guilty Plea Agreement ¶ 9; see also United States v. Schweitzer, 454 F.3d 197, 205

(holding that plea agreement with substantially identical language "contains an express and

unambiguous waiver").  The fact that the Acknowledgment of Rights contains some, but not all

---

[8]  Rule 11 provides, in relevant part, that: "Before the court accepts a plea of guilty or
nolo contendere, the defendant may be placed under oath, and the court must address the
defendant personally in open court. During this address, the court must inform the defendant of,
and determine that the defendant understands . . . (N) the terms of any plea-agreement provision
waiving the right to appeal or to collaterally attack the sentence."  Fed. R. Crim. P. 11(b)(1)(N).

of the provisions of the Guilty Plea Agreement does not change this fact.[9]

Third, petitioner asserts that he was "under the influence of anti-psychotic medication at the time of the plea" and that the plea was therefore unknowing and involuntary.  Mem. Law Supp. at 13.  The Court rejects this argument.  At the May 23, 2005 change of plea hearing, the Court engaged in an extended colloquy with petitioner about his mental health.  Tr. 5/23/05 at 10-14.  Both petitioner and a mental health expert of the United States Probation Department testified that petitioner was taking medication that controlled the symptoms of his mental illness, and that the mediation would not prevent petitioner from understanding the Court's questions and answering them truthfully.  Id.  The Court explicitly held that petitioner was "fully competent and capable of entering an informed plea."  Id. at 72.

In addition, petitioner argues that the waiver provision in his Guilty Plea Agreement was the product of ineffective assistance of plea counsel.  The Court analyzes petitioner's ineffectiveness claim under the "miscarriage of justice" prong of Khattak.  To the extent that the issue is relevant to whether petitioner's waiver was knowing and voluntary, the Court rejects petitioner's argument for the reasons set forth in Section IV(C)(1) below.

Under all of the evidence, the Court concludes that petitioner knowingly and voluntarily waived his rights to collaterally attack the judgment against him.  Absent a "miscarriage of justice," which does not exist in this case, the waiver provision of his Guilty Plea Agreement is valid and bars petitioner's claims for relief.

---

[9]  As the government explained at the May 3, 2007 evidentiary hearing, the Acknowledgment of Rights does not include the waiver of collateral attack provision because that document is  "a written shorthand of what the Court always covers in a guilty plea" and "[i]n a normal guilty plea colloquy the Court does not address the question of the right to collaterally attack."  Tr. 5/3/07 at 76.

13

**C.     Enforcement of the Waiver Would Not Result in a Miscarriage of Justice**

The remaining question before the Court is whether enforcement of the waiver would amount to a "miscarriage of justice." Khattak, 273 F.3d at 562.  In order to answer this question, the Court considers two arguments made by petitioner in the § 2255 Motion: (1) that the waiver provision of petitioner's Guilty Plea Agreement was the product of ineffective assistance of counsel; and (2) that there was no factual basis for petitioner's guilty plea to Count 1, threatening to use a weapon of mass destruction in violation of 18 U.S.C. §§ 2332a(a)(2) and (3).  The Court addresses each of these issues in turn.  The arguments in section IV(A) above are incorporated in this section by reference.

**1.     The Waiver Was Not the Product of Ineffective Assistance of Counsel**

In the § 2255 Motion, petitioner asserts that the waiver of collateral attack provision of his Guilty Plea Agreement is invalid because the waiver was the result of ineffective assistance of plea counsel.  The Court disagrees.

**a.     Legal Standard: Strickland**

"Strickland v. Washington, 466 U.S. 668 (1984), supplies the standard for addressing a claim of ineffective assistance of counsel." United States v. Smack, 347 F.3d 533, 537 (3d Cir. 2003).  This standard requires a familiar two-part inquiry.  First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688.  "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense." Id. at 687.  The measure for counsel's performance under the first prong of Strickland is "reasonableness under prevailing professional norms." Id. at 688.  As to the second prong of Strickland, a petitioner must demonstrate that "there is a reasonable probability

14

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

In this case, the Court concludes that plea counsel's representation was reasonable under Strickland. Moreover, with respect to the prejudice prong, for the reasons stated in Section IV(C)(2) of this Memorandum, which addresses the claim of miscarriage of justice, the Court concludes that none of petitioner's claims are meritorious and that he therefore fails to satisfy the prejudice prong of Strickland.

> **b.    Plea Counsel's Representation Was Reasonable Under Prevailing Professional Norms**

Under paragraph 9 of his Guilty Plea Agreement, petitioner "voluntarily and expressly" waived his right to collateral attack under § 2255.  Guilty Plea Agreement ¶ 9.  Under paragraph 10 of the Guilty Plea Agreement, petitioner further asserted that he was "satisfied with the legal representation provided by the defendant's lawyer; the defendant and this lawyer have fully discussed this plea agreement; and the defendant is agreeing to plead guilty because the defendant admits that he is guilty." Id. ¶ 10.

During this Court's Rule 11 colloquy, petitioner stated that he understood the waiver provision.  Tr. 5/23/05 at 40.  Petitioner further testified that he read the Guilty Plea Agreement "[a] few times," that he had discussed the agreement with counsel, and that plea counsel had answered any questions he had regarding the plea agreement.  Id. at 47-48.  At the May 3, 2007 evidentiary hearing, plea counsel corroborated that he explained the waiver provision to petitioner and that he had "no doubt" that petitioner understood the waiver.  Tr. 5/3/07 at 13. Petitioner testified that plea counsel explained that a collateral attack was "like an appeal" and

that both plea counsel and the government told him that if he pled guilty, the case would be over. Id. at 44, 57.

Moreover, at the May 3, 2007 evidentiary hearing, plea counsel explained why he did not object to the waiver provision of the Guilty Plea Agreement–the government required that petitioner agree to that provision in exchange for the C plea. Plea counsel explained this to petitioner, as follows: "I wanted to make it clear, and I'm sure I did, that with a negotiated sentence of a specific term, if the Court accepted it, then the quid pro quo, a tradeoff would be that the Government and the defense had made their peace and everyone would go their own way." Tr. 5/3/07 at 11. Plea counsel believed that the C plea was a favorable outcome, despite the waiver provision, because "it would have been a very, very difficult case [to try]. An assessment as to whether or not we would have an acquittal was slim/none." Id. at 9. Had petitioner been convicted, the applicable sentencing range under the Sentencing Guidelines would have been 262 to 327 months imprisonment–more than double the 108 months imprisonment petitioner received under the C plea. Tr. 8/10/05 at 13.

Further, under the C plea, Count 2, which charged malicious damage or destruction of a building with fire, was included in a Superceding Information filed in this Court. Prior to the inclusion of Count 2 in the Superceding Information, there was a pending investigation into the malicious destruction of a building in "the Middle District area of Pennsylvania." Tr. 5/23/05 at 2. The inclusion of Count 2 in the case led to no increase in the sentencing guideline range. Tr. 8/10/05 at 11. That guideline range, 262 to 327 months, was based entirely on the charge in Count 1. Id. Had defendant been separately charged and convicted on Count 2, he might have been subject to an additional period of incarceration. Instead, Count 2 was incorporated in the C

16

plea and petitioner eliminated the risk of a separate sentence on that charge.  Tr. 5/3/07 at 10-11.

The Guilty Plea Agreement, the Court's Rule 11 colloquy, and the testimony of plea counsel and petitioner at the evidentiary hearing all demonstrate that plea counsel's representation was objectively reasonable as to the negotiation of the waiver.  Thus, the Court concludes that waiver of the right to collateral attack in petitioner's Guilty Plea Agreement was not the product of ineffective assistance of counsel and that enforcement of the waiver would not result in a miscarriage of justice.

### 2.      There Was No Miscarriage of Justice: Petitioner's Claims for Relief Are Without Merit

In the § 2255 Motion, petitioner asserts that there was no factual basis for his guilty plea to Count 1, threatening to use a weapon of mass destruction under 18 U.S.C. §§ 2332a(a)(2) and (3).  The Court considers this claim for the limited purpose of determining whether enforcing the waiver of collateral attack provision would result in a "miscarriage of justice."  The Court concludes that the § 2255 Motion raises no meritorious claim of constitutional error.  As such, there is no miscarriage of justice, and the waiver provision of petitioner's Guilty Plea Agreement is enforceable.

### a.      Legal Standard: 18 U.S.C. §§ 2332a(a)(2) and (3)

In Count 1, petitioner pled guilty to threatening to use a weapon of mass destruction under 18 U.S.C. §§ 2332a(a)(2) and (3).  Section 2332a(a) provides, in relevant part, that:

> A person who, without lawful authority, uses, threatens, or attempts or conspires to use, a weapon of mass destruction
>
> * * *
>
> > (2) against any person or property within the United States, and . . . (D) the offense, or the results of the offense, affect interstate or foreign commerce, or, in the case of a threat, attempt, or conspiracy, would have affected

interstate or foreign commerce;

(3) against any property that is owned, leased or used by the United States or by any department or agency of the United States, whether the property is within or outside of the United States
* * *
shall be imprisoned for any term of years or for life, and if death results, shall be punished by death or imprisoned for any term of years or for life.

18 U.S.C. § 2332a.

Under the § 2332a, the term "weapon of mass destruction" means–(A) any destructive device as defined in section 921 of this title."  18 U.S.C. § 2332a(c)(2).  Section 921 defines "destructive device" as, *inter alia*, "any explosive, incendiary, or poison gas–(i) bomb . . . ."  18 U.S.C. § 921(a)(4).

The phrase "threatens . . . to use" is not defined in § 2332a.  However, the Second Circuit has defined "threat" in the context of § 2332a as a statement that "an ordinary, reasonable recipient who is familiar with the context of the letter would interpret . . . as a threat of injury."  United States v. Davila, 461 F.3d 298, 305 (2d Cir. 2006) (citing United States v. Malik, 16 F.3d 45, 49 (2d Cir. 1994)).  Although the Third Circuit has not ruled on this issue, it is likely that it would adopt a similar definition as the Second Circuit.  See United States v. Zavrel, 384 F.3d 130, 136 (3d Cir. 2004) (adopting the Second Circuit's definition of "threat" in the context of 18 U.S.C. § 876); see also United States. v. Guevara, 408 F.3d 252, 256 (5th Cir. 2005) (defining "threat" as "a communication that has a reasonable tendency to create apprehension that [the] originator of the communication will act as represented").

**b.**     **There Was a Factual Basis for Petitioner's Guilty Plea to Count 1**

In his § 2255 Motion, petitioner asserts that he did not threaten to use a weapon of mass

destruction within the meaning of § 2332a, for five reasons.  The gravamen of petitioner's arguments is that a hoax does not qualify as threatening to use a weapon of mass destruction under § 2332a.  The Court disagrees.  Each of petitioner's arguments is addressed in turn.

First, petitioner argues that a "threat . . . to use" under § 2332a requires a threat of future conduct, allegedly absent in this case.  Mem. Law. at 19.  In support of this argument, petitioner cites United States v. Taylor, 2003 WL 22073040, *8 (S.D.N.Y. Sept. 5, 2003), in which a district court held that "[t]he word 'threatens,' taken in conjunction with the words 'to use,' require[s] active employment of something in the future."  The Taylor court further held that a hoax note that stated "Anthrax is here [at] ABC" did not imply future conduct, and so did not constitute a violation of § 2332a.  Id.

This Court, like many others, rejects the Taylor court's interpretation of § 2332a.  See Davila, 461 F.3d at 304; United States v. Evans, 478 F.3d 1332 (11th Cir. 2007); Guevara, 408 F.3d at 256-57; United States v. Reynolds, 381 F.3d 404, 406 (5th Cir. 2004), cert. denied 543 U.S. 1073 (2005).  See also Zavrel, 384 F.3d at 136, 136 n.2 (holding that phrase "threat to injure" in 18 U.S.C. § 876 does not require future action, but not considering the phrase "threat to use" in § 2332a).  The Court concludes that the phrase "threatens . . . to use" in § 2332a does not require a threat of future conduct by the defendant.  "An impression of impending injury is created not only by a communication promising to commit a dangerous act in the future, but also by the delivery of a substance that appears to be injurious."  Davila, 461 F.3d at 302.  Moreover, even if the Taylor holding were correct, persons who learned of the fake bomb planted by petitioner would fear future harm.  See Zavrel, 384 F.3d at 136, 136-37 (holding that person exposed to fake anthrax would naturally "be fearful of future harm").

19

Second, petitioner argues that Congress did not intend § 2332a to apply to hoaxes.  In support of this argument, petitioner cites 18 U.S.C. § 1038(a)(1), a 2004 statute "apparently aimed more directly at hoaxes" than § 2332a.  Davila, 461 F.3d at 303-304.[10]  The Court concludes that the passage of § 1038(a)(1) does not preclude the application of § 2332a to hoaxes for two reasons.  "First, the intent of Congress in 2004 is not necessarily indicative of the intent of the earlier Congress that enacted section 2332a . . . Second, to the extent that the legislative history is relevant, it merely indicates that Congress perceived a gap with respect to hoaxes that did not involve a specific threat."  Id. at 304; see also Guevara, 408 F.3d at 256, 256 n.3 (holding that § 1038(a)(1) argument was "unavailing" in hoax anthrax case and affirming conviction under § 2332a).

Third, petitioner argues that "[t]here was no evidence of use [under § 2332a] because there was no [real] weapon of mass destruction."  Mem. Law. Supp. at 19.  This argument fails for the simple reason that defendant pled guilty to "threaten[ing] . . . to use, a weapon of mass destruction," not the actual "use" of such a weapon.  See 18 U.S.C. § 2332a.  Accordingly, "the government need not prove that the weapon of mass destruction . . . was either used or carried."  United States v. Khalil, 214 F.3d 111, 120 (2d Cir. 2000), cert. denied 531 U.S. 937 (2000).

Fourth, petitioner argues that "there was no evidence that the use of the non-existent weapon of mass destruction would have had an effect on interstate commerce."  Mem. Law

---

[10]  Section 1038(a)(1) provides, in relevant part, that:
Whoever engages in any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of [various statutes relating to weapons and explosives, terrorist acts, and related activities] shall [be guilty of a crime].
18 U.S.C. § 1038(a)(1).

Supp. at 19 (emphasis in original).  In this argument, petitioner misstates the interstate commerce element of § 2332a.  That element does not turn on the use of a fake weapon.  Rather, it requires that the threatened use of a weapon of mass destruction would have affected interstate commerce if the weapon had been real.  See Davila, 461 F.3d at 305 (holding that in case of "hoax anthrax mailing, the proper inquiry . . . is whether commerce would have been affected if the letter had actually contained anthrax"); United States v. Wise, 221 F.3d 140, 152 (5th Cir. 2000) ("The statute does not require, in the case of a threat, an actual or substantial effect on commerce; it requires only a showing that the use would have affected commerce.").

In this case, there was ample evidence to satisfy the interstate commerce element. Petitioner planted the fake bomb at Philadelphia International Airport.  He admitted that he knew that government property was in the immediate vicinity of the bathroom, that government agents used the terminal, and that the fake bomb would disrupt at least a portion of the airport.  Tr. 5/23/05 at 62-65.  Accordingly, the Court properly held that petitioner's plea to Count 1 was "supported by an independent basis in fact" as to the interstate commerce element.  Id. at 72.

Finally, petitioner argues that he had "no specific intent" to use "the non-existent weapon."  Mem. Law Supp. at 18.  The Court rejects this argument because § 2332a is not a specific intent crime.  See United States v. McMorrow, 434 F.3d 1116, 1119 (8th Cir. 2006) (holding that "the intent to carry through on a threat is not an element of" § 2332a(a)(2)).  At the change of plea hearing, petitioner testified that he placed the fake bomb knowing that it would disrupt at least a portion of the airport.  Tr. 5/23/07 at 65.  This evidence was sufficient to establish the mental state requirement of § 2332a.  Id.

The Court concludes that there was a factual basis for petitioner's guilty plea to Count 1,

threatening to use a weapon of mass destruction in violation of § 2332a.  Accordingly, enforcing the waiver provision of petitioner's Guilty Plea Agreement would not result in a miscarriage of justice.

## V.   CERTIFICATE OF APPEALABILITY

"At the time a final order denying a petition under 28 U.S.C. § 2255 is issued, the district judge shall make a determination as to whether a certificate of appealability should issue."  Third Cir. Loc. App. R. 22.2; see also United States v. Williams, 158 F.3d 736, 742 n.4 (3d Cir. 1998).

A certificate of appealability shall issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where the district court rejects a § 2255 motion on procedural grounds, a certificate of appealability shall issue when petitioner establishes: "[1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Cooper v. Price, 82 Fed. Appx. 258, 259-60 (3d Cir. 2003).

In this case, the Court concludes that jurists of reason would not debate the Court's conclusion that the § 2255 Motion fails to state a valid claim of the denial of a constitutional right.  The Court further concludes that jurists of reason would not debate the Court's conclusion that the waiver provision of the Guilty Plea Agreement precludes petitioner from collaterally attacking his conviction and sentence.  Thus, a certificate of appealability will not issue.

## VI.   CONCLUSION

For the foregoing reasons, the Court concludes that petitioner knowingly and voluntarily accepted the waiver provision in the Guilty Plea Agreement and that enforcing the waiver would

not work a miscarriage of justice.  Accordingly, the government's Motion to Dismiss is granted and petitioner's § 2255 Motion is dismissed with prejudice.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **CRIMINAL ACTION** |
| v. | : | NO. 04-619 |
| | : | |
| PRESTON LIT | : | **CIVIL ACTION** |
| | : | NO. 07-903 |

## O R D E R

**AND NOW**, this 12th day of June, 2007, upon consideration of petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title 28, United States Code, Section 2255 (Document No. 88, filed March 6, 2007); the Government's Motion to Dismiss Petition Under 28 U.S.C. § 2255 (Document No. 90, filed March 8, 2007); petitioner's Response to Government's Response Opposing His Section 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 92, filed March 20, 2007); petitioner's Supplemental Response to Government's Response Opposing His Section 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 96, filed May 1, 2007); petitioner's Post Hearing Memorandum of Law in Support of Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title 28, United States Code, Section 2255 (Document No. 101, filed May 30, 2007); the Government's Response to Defendant's Post Hearing Memorandum (Document No. 102, filed May 31, 2007); and the testimony of petitioner and Robert Donatoni, Esq. at the evidentiary hearing on May 3, 2007, for the reasons set forth in the attached Memorandum, **IT IS ORDERED** as follows:

1.     The Government's Motion to Dismiss Petition Under 28 U.S.C. § 2255 is **GRANTED**;

2.      Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title

28, United States Code, Section 2255 is **DISMISSED WITH PREJUDICE**;

3.      A certificate of appealability will not issue on the ground that petitioner has not

made a substantial showing of a denial of a constitutional right as required under 28 U.S.C.

§ 2253(c)(2).


                                        **BY THE COURT:**


                                        **/s/ Honorable Jan E. DuBois**

                                        **JAN E. DUBOIS, J.**